Mary Elizabeth Foy **DONNELLY**, Appellant,

v.

H. Gibson **GUION** et al., Appellees.

No. 12, Docket 71-2166.

United States Court of Appeals, Second Circuit.

Argued Sept. 21, 1972.

Decided Oct. 10, 1972.

Charles N. Segal, Hartford, Conn., for appellant.

William R. Moller, Hartford, Conn. (Wesley W. Horton, Regnier, Moller & Taylor, Hartford, Conn., on the brief), for appellees.

Before KAUFMAN, SMITH and MANSFIELD, Circuit Judges.

IRVING R. KAUFMAN, Circuit Judge:

This appeal, taken by the mother of the young man whose tragic and untimely death precipitated this litigation, requires us to determine whether the district judge correctly granted the defendants' motion for summary judgment. Unmistakably, summary judgment is a drastic device because its prophylactic function, when exercised, cuts off a party's right to present his case to the jury. Yet, if the case is totally devoid of an issue of fact there is no reason why the curtain should rise on the trial. After a careful review, we conclude that the af-fidavits submitted by the parties revealed no genuine issue as to any material fact. Accordingly, we affirm the judgment below.

### I.

The factual setting of this case is relatively brief. David Foy, a resident of Miami Beach, Florida, where his mother Mary Donnelly resided, was a student at the Canterbury School in New Milford, Connecticut. David, who was sixteen years old, suffered from Marfan's syndrome, a congenital condition affecting the connective tissues. In many instances Marfan's syndrome leads to the formation of an aneurysm which if it ruptures may cause death.

Misfortune struck on the morning of January 31, 1969. David was found in his bed, apparently lifeless, by another student at the Canterbury School. Dr. Robert McDonald, the school physician and also medical examiner for New Milford, was summoned and upon examining the young man concluded he was dead. Dr. McDonald knew from the school's medical records that David suffered from Marfan's syndrome but he concluded that an autopsy was necessary to determine with certainty the cause of David's death because there were no external indications of its cause. Accordingly, the body was transported to the New Milford Hospital Morgue, where an autopsy was performed by Dr. Ernest Izumi, a pathologist in private practice designated by H. Gibson Guion, the county coroner, to perform autopsies. This autopsy revealed that the death resulted from a "Ruptured saccular aneurysm due to Marfan's syndrome."

Whatever initial feelings Mrs. Donnelly experienced,[1] it is clear that she eventually became quite distraught over the

---

1. It is disputed at this point in the proceedings whether during a telephone conversation on the afternoon of January 31 Mrs. Donnelly consented or objected to performance of the autopsy. It is further disputed whether Mrs. Donnelly ever requested Izumi to return certain organs he removed from the body during the course of the autopsy and it is uncertain from the documents submitted on the motion for summary judgment whether Guion was informed of David's death before or after the autopsy was performed. Resolution of these issues, however, is unnecessary to a decision in this case.

performance of the autopsy on her son, which she says was performed without her consent. Accordingly, she commenced the instant litigation in January 1970. The action, brought in the District Court for the District of Connecticut, named McDonald, Guion and Izumi as defendants.[2] The complaint sought damages for the mental and physical distress suffered by Mrs. Donnelly by reason of the autopsy and also resulting from the failure of Dr. Izumi to return organs which had been removed from the body. It alleged that Dr. McDonald had no reason to suspect that the cause of death was anything but the rupture of an aneurysm caused by Marfan's syndrome; accordingly, his conclusion that an autopsy was necessary to determine the cause of death was "wanton, reckless and unlawful." It charged further that Conn.Gen.Stats. § 19–143 required the consent of a relative prior to performing an autopsy in all cases except where there is a suspicion that criminal conduct was responsible for the death. Guion's liability was grounded in his failure to examine the body before the autopsy was performed as it was claimed was required by Conn.Gen.Stats. § 6–59. Dr. Izumi, the complaint stated, was liable because he performed the unauthorized autopsy.

After Judge Blumenfeld denied a motion, pursuant to Rule 12(b)(6), F.R. Civ.P., to dismiss the action for failure to state a claim upon which relief could be granted, the defendants moved for summary judgment on all claims under Rule 56, F.R.Civ.P. The parties submitted affidavits in support of, and in opposition to, the motion. Among other things, Dr. McDonald's affidavit stated that he concluded that an autopsy was necessary to determine the cause of

death because David's medical history, including his most recent X rays and his recent general health, revealed no aneurysm formation and because there were no external indications of the cause of death. In sum, he stated "the common indications of death from Marfan's were not present and I felt for this reason that I could not state the cause of death with any degree of certainty unless an autopsy was performed." In response to Dr. McDonald's sworn assertions, Mrs. Donnelly's affidavit stated:

> I believe that my son's medical record at the school, plus knowledge of his condition by Dr. McDonald, as the school physician, plus the fact that he was found dead in his bed, taken together could lead only to a conclusion of a natural death due to his pre-existing heart problems.[3]

■ Judge Blumenfeld decided that no genuine issue as to any material fact survived, as required by Rule 56, and that Dr. McDonald's conclusion that the cause of death was uncertain did not constitute wanton and wilful misconduct.[4] He further held that where the cause of death was obscure, Connecticut law authorized the medical examiner to order an autopsy without securing a relative's written consent and without a prior examination of the body by the coroner. Accordingly, he ordered summary judgment in favor of all three defendants on that portion of the complaint which alleged an unauthorized autopsy. Summary judgment was denied on Mrs. Donnelly's claim against Dr. Izumi for retention of the removed organs since the filed affidavits revealed a genuine issue as to whether she requested their return. Judge Blumenfeld subsequently entered an order of final judgment under Rule 54(b), F.R.Civ.P., as to

---

2. Jurisdiction was grounded in diversity of citizenship.

3. Because the other statements in these affidavits and those submitted by Guion and Dr. Izumi do not bear on the questions presented by this appeal, we make no further reference to them.

4. Under Connecticut law, the medical examiner, who is a state official as defined by Conn.Gen.Stats. § 4–165, is not liable for alleged misbehavior unless it is wanton and wilful misconduct. *See* Wadsworth v. Middletown, 94 Conn. 435, 109 A. 246 (1920).

McDonald and Guion and this appeal followed.[5]

## II.

Rule 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact". Mrs. Donnelly argues that her affidavit indicated a genuine issue of material fact as to whether the cause of David's death was obscure. Although the portions of the affidavits referred to above do reveal a difference of opinion among the parties, the rule requires that the opposing party present some evidence which supports the bald assertion that there is a dispute. The concluding two sentences of Rule 56(e), added in 1963, specify that "[w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response . . . must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him." This clarifying amendment [6] merely expresses the standard always applied in this Circuit that "[w]hen a party presents evidence on which, taken by itself, it would be entitled to a directed verdict . . . it rests upon [the opposing] party at least to specify some opposing evidence which

it can adduce and which will change the result." Radio City Music Hall Corp. v. United States, 135 F.2d 715, 718 (2d Cir. 1943). Mrs. Donnelly failed to meet this requirement.

Dr. McDonald's affidavit explicitly stated facts which he believed supported his conclusion that the cause of death was obscure. He said there had been no past evidence of aneurysm formation either in David's most recent X-rays or in his recent state of health and that there had been no external indications of the cause of death. In response to this physician's statement, Mrs. Donnelly merely asserted the conclusion, without supplying any supporting reasons, evidence, or facts for its basis, that the cause of death was not obscure when David's medical record was considered. Thus, her affidavit presented no facts to contest Dr. McDonald's findings. If this case had proceeded to trial and nothing remained in the case but Mrs. Donnelly's vague and conclusory allegations, unsupported by evidence, it is clear that a directed verdict would have been appropriate. If, indeed, evidence was available to underpin her conclusory statement, Rule 56 required her to come forward with it. A party opposing a motion for summary judgment simply cannot make a secret of his evidence until the trial, for in doing so he risks the possibility that there will be no trial. A summary judgment motion is intended to "smoke out" the facts so that the judge can decide if anything remains to be tried.[7] *See* Applegate v.

---

5. In the absence of such an order, none of the judgments granted by Judge Blumenfeld would be appealable at this time because the claim against Dr. Izumi for illegal retention of the removed organs remained to be tried. *See* Rule 54(b), F.R.Civ.P.; 28 U.S.C. § 1291. Because Judge Blumenfeld declined to enter final judgment as to Dr. Izumi, we cannot consider the grant of summary judgment in his favor. *See* The Robert Stigwood Group, Ltd. v. Hurwitz, 462 F.2d 910, 913–914 (2d Cir. 1972).

6. The change was made to overturn a line of Third Circuit cases which held that "well-pleaded" averments in the opposing

party's papers could not be pierced by factual statements in an affidavit. *See* 6 Moore, Federal Practice ¶ 56.22[2] at 2821–22.

7. Rule 56(f) provides that where it appears from stated reasons that an opposing party cannot present by affidavit facts to support his opposition, the court may deny summary judgment or order a continuance of the motion to permit submission of affidavits or discovery to be had. No such showing was made by Mrs. Donnelly nor was there any request that the court afford the relief provided in this subsection.

Top Associates, Inc., 425 F.2d 92 (2d Cir. 1970); Dressler v. MV Sandpiper, 331 F.2d 130 (2d Cir. 1964); Radio City Music Hall Corp., *supra*; 6 Moore, Federal Practice ¶ 56.11[3] at 2171–75. Cases such as Empire Electronics Co. v. United States, 311 F.2d 175 (2d Cir. 1962) and Cali v. Eastern Airlines, Inc., 442 F.2d 65 (2d Cir. 1971) are cited to us by the appellant but they are clearly distinguishable. These cases properly held that although there may be no dispute as to the basic evidentiary facts, summary judgment is improper where the case stands or falls on the inference that may be drawn from these facts— particularly where the inferences depend upon subjective feelings and intent. But this rule applies only where the "undisputed evidentiary facts disclose competing material inferences as to which reasonable minds might disagree". 442 F.2d at 71. In the absence of medical or other evidence to contradict Dr. McDonald's statements, we believe that reasonable minds could not conclude that Dr. McDonald's determination that the cause of death was obscure was wanton and wilful. Accordingly, the affidavits revealed no genuine issue as to any material fact.

This conclusion, however, does not end our consideration. Judge Blumenfeld interpreted the Connecticut statutes as authorizing Dr. McDonald to order the autopsy because the doctor believed the cause of death was "obscure" and, in addition, the statutes did not require the coroner Guion to view the body before such an autopsy.

■ The Connecticut statutes we are considering are not models of clarity.[8] Although Conn.Gen.Stats. § 19–143 requires a relative's consent to an autopsy except where criminality is suspected, other statutes appear to grant the medical examiner authority to order an autopsy when the cause of death is "obscure." Section 6–57 provides that "When a medical examiner has reason to suspect that the person whose body he

has viewed came to his death by the criminal act . . . of another or others, he shall . . . notify the coroner . . . ." But § 6–59 states:

> If the coroner or the medical examiner, after a view and inquiry had by the coroner, has reason to suspect that the death was caused by the criminal act . . . of another or others *or if the cause is obscure,* said coroner and said medical examiner *or either of them* may cause an examination or autopsy to be made . . . . (emphasis added)

When read in connection with § 6–57, which requires the medical examiner to notify the coroner only when criminality is suspected, § 6–59 would seem to indicate that in cases where the cause of death is obscure, the medical examiner may order an autopsy without a relative's consent and without a view and inquiry by the coroner. The logic of this interpretation is supported by § 6–56, which requires the medical examiner to sign the death certificate and to state the cause of death in all cases except where he suspects criminality. *A fortiori,* the medical examiner would be unable to state the cause of death without an autopsy if it could not be determined from external indications or medical records.

It is unfortunate that the law cannot furnish a balm for the grief which Mrs. Donnelly has endured, although we suspect that money could never compensate her adequately for this loss. But the law's requirements, however harsh, were set forth clearly in this case. Dr. McDonald acted well within the scope of his authority under Connecticut law when he ordered the autopsy to determine the cause of David's death and there was no legal duty for Guion, the coroner, to view the body before the autopsy was performed. Accordingly, Judge Blumenfeld was correct in granting summary judgment in favor of Dr. McDonald and Guion.

Judgment affirmed.

8. The statutes involved in this appeal were superseded as of July 1, 1970, by the Medicolegal Investigations Act, Pub.Act No. 699 (1969).