**UNITED STATES of America, Plaintiff,**

v.

**Bertram L. PODELL, Defendant.**

**No. 76 Civ. 509.**

United States District Court,
S. D. New York.

May 30, 1977.

Robert B. Fiske, Jr., U. S. Atty., S. D. N. Y., New York City, for plaintiff by Richard J. McCarthy, Asst. U. S. Atty., New York City, of counsel.

Daniel M. Shientag, New York City, for defendant.

## OPINION AND ORDER

KEVIN THOMAS DUFFY, District Judge.

The government has moved for summary judgment in this action which seeks to recover $41,350 allegedly paid defendant, a former United States Congressman, in violation of the federal conflict of interests statute, 18 U.S.C. § 203, prohibiting a member of Congress during his incumbency to receive compensation for services rendered with respect to any matter in which the United States has a direct and substantial interest before any department or agency.[1] It is the government's position that receipt of these monies in violation of § 203 constitutes a breach of the fiduciary duty which defendant owed the government and that defendant is thus accountable by means of a constructive trust imposed on his property to the extent of $41,350.

On October 1, 1974, defendant entered a plea of guilty to paragraphs 1 and 5 of count 1, and to count 5 of the criminal indictment in *United States v. Podell, et al.*, 73 Cr. 675, charging him with conspiratorial and substantive violations of § 203(a). The indictment basically charged in ten counts that defendant, while a member of Congress, had appeared before the Civil Aeronautics Board ("CAB") and the Federal Aviation Administration ("FAA") on behalf of Florida Atlantic Airlines, Inc. ("FAAL") which was seeking permission from the CAB to operate a route between Florida

---

1. 18 U.S.C. § 203 provides in pertinent part:

(a) Whoever . . . directly or indirectly receives or agrees to receive, or asks, demands, solicits, or seeks, any compensation for any services rendered or to be rendered either by himself or another—

(1) at a time when he is a Member of Congress . . .

in relation to any proceeding, application, request for a ruling or other determination, con-

tract, claim, controversy, charge, accusation, arrest, or other particular matter in which the United States is a party or has a direct and substantial interest, before any department, agency, court-martial, officer, or any civil, military, or naval commission . . .

Shall be fined not more than $10,000 or imprisoned for not more than two years, or both; and shall be incapable of holding any office of honor, trust, or profit under the United States.

and the Bahamas and was opposing a revocation by the FAA of its operating certificate, and had received $41,350 for these services. The specific portions of the indictment to which defendant pleaded guilty are set forth in the margin.[2]

The government contends that the plea estops defendant from contesting his violation of § 203, and that the acts thereby admitted constitute a breach of fiduciary duty owed the United States establishing liability therefor as a matter of law. To evidence the amount of liability, the government has submitted three checks totalling $41,350, payable to entities through which defendant purportedly admitted he was compensated, and drawn by drawers who defendant allegedly admitted paid him for his illegal services. The government further asserts that the affirmative defense of statute of limitations raised in defendant's answer is without merit.

In opposition to the government's motion, defendant asserts that an issue of fact exists as to the acts encompassed by the plea and the amount allegedly paid. He further contests the sufficiency of the government's cause of action and, alternatively, viability of the claim in light of the statute of limitations.

■ Under 18 U.S.C. § 218, the United States is granted recovery rights with re-

---

2.
> **COUNT ONE**
>
> 1. From in or about March 1968, up to and including the date of the filing of this indictment, in the Southern District of New York and elsewhere, BERTRAM L. PODELL . . . and MARTIN MILLER, the defendants, and Kenneth G. Burnstine, and Michael Zorovich, named as co-conspirators but not as defendants, did combine, conspire, confederate and agree together and with each other and with other persons to the Grand Jury known and unknown, to violate Section . . . 203 of Title 18, United States Code and to defraud the United States and its departments, agencies and branches by obstructing, hindering and impairing said departments, agencies and branches in connection with the performance of their lawful governmental functions, including; the lawful governmental functions of the United States Congress and the legitimate representation by its Members of the interests of the United States and their constituents; the lawful governmental functions of the Civil Aeronautics Board (CAB), the Federal Aviation Administration (FAA) . . . in considering and approving routes for international air travel; the lawful governmental functions of the FAA in its determinations as to revocations of operating certificates . . .
>
> \* \* \* \* \* \*
>
> 5. Among the means by which the defendants and their co-conspirators would and did carry out the unlawful purposes set forth above, were the following:
>
> \* \* \* \* \* \*
>
> (b) The defendant BERTRAM L. PODELL would and did, travel to the Bahama Islands to speak to United States and Bahamian officials, and send letters and make telephone calls to, and attend meetings with, officers and employees of the United States and of agencies and departments thereof, including the CAB, the FAA . . . for the purpose of affecting, inducing, and pressuring said officials, officers and employees on behalf of FAAL.
>
> (c) The defendant MARTIN MILLER and co-conspirators Kenneth G. Burnstine and Michael Zorovich would and did offer, and would and did directly and indirectly pay and caused to be paid, money and other things of value to the defendant, . . . BERTRAM L. PODELL . . . and others, in the form of payments to the Citizen's Committee for the Reelection of Bertram L. Podell and in the form of fees to the law firm of Podell & Podell, and the defendant . . . BERTRAM L. PODELL . . . would and did agree to receive and did receive money and other things of value in return for the services described in paragraphs 5(a) and (b) of this count.
>
> \* \* \* \* \* \*
> **COUNT FIVE**
> The Grand Jury further charges:
> From in or about December, 1968 up to and including September 24, 1970, in the Southern District of New York, BERTRAM L. PODELL a Member of Congress . . . the defendant . . . unlawfully, wilfully and knowingly otherwise than as provided by law for the proper discharge of official duties, directly and indirectly did receive and agree to receive, ask, demand, solicit, and seek compensation for services rendered and to be rendered by the defendant BERTRAM L. PODELL and others in relation to proceedings, applications, requests for rulings and other determinations, controversies and other particular matters in which the United States was a party and had a direct and substantial interest, before departments, agencies and officers of the United States, namely, an application by FAAL for a route designation then pending before the CAB . . . and a proceeding for suspension and revocation of FAAL's operating certificate then pending before the FAA and the National Air Transportation Safety Board.

spect to its transfers "in relation to which there has been a final conviction for any violation of this chapter." By analogy to that section, defendant argues that the absence of a similar recovery provision for sums paid in violation of § 203 demonstrates that the government has failed to state a claim upon which relief can be granted. This contention misapprehends the theory of this action, which seeks the recovery of sums not because they were paid in violation of § 203, but, rather, because they were paid in breach of a fiduciary duty, as evidenced by a violation of § 203. The action is based on principles of equity, and not on any federal statutory authority; and despite the existence of 18 U.S.C. § 218, courts have not been reluctant to recognize and remedy the misuse of a confidential relationship with the United States by employees or officials serving inconsistent interests for their own gain. See *United States v. Drumm*, 329 F.2d 109 (1st Cir. 1964); *United States v. Drisko*, 303 F.Supp. 858 (E.D.Va.1969). Thus, defendant's attack on the sufficiency of the government's cause of action must fail.

■ Defendant's contention that this action is barred by the statute of limitations is equally misplaced since it is predicated on the insufficiency of the government's claim as asserted and an anticipated amended or new complaint sounding in fraud.[3] Thus, defendant argues that under N.Y.C.P.L.R. §§ 213 and 203(f), the government would have had to bring suit within six years of the fraud or two years of its discovery, a period long expired by January 30, 1976, the date of the commencement of this action. Since fraud is neither alleged nor involved in this action, defendant's contention is wholly without merit.

■ Turning to the merits of the motion for summary judgment, it is initially clear that proof of a public official's violation of § 203 will establish, as a matter of

law, his breach of fiduciary duty owed the United States. A public official stands in a fiduciary relationship with the United States, through those by whom he is appointed or elected. *Trist v. Child*, 88 U.S. (21 Wall.) 441, 450, 22 L.Ed. 623 (1874). If he secretly advances interests adverse to those of the government which he serves, it is a breach of confidence and he must account to his "master" for the benefits received as a result, irrespective of consideration of fraud or damage. See *United States v. Carter*, 217 U.S. 286, 305–06, 30 S.Ct. 515, 54 L.Ed. 769 (1910); *United States v. Drisko, supra*, at 860.

■ Section 203 is one of several statutory conflict-of-interest prohibitions "designed to prohibit government officials from engaging in conduct that might be inimical to the best interests of the general public." *United States v. Mississippi Valley Co.*, 364 U.S. 520, 548, 81 S.Ct. 294, 308, 5 L.Ed.2d 268 (1961). A member of Congress who is secretly compensated for advocating private interests as an attorney before government agencies and departments has clearly divided loyalties; § 203 attempts to prevent the wearing of both public and private hats when both public and private interests are at stake. See *United States v. Johnson*, 215 F.Supp. 300, 315 (D.Md.1963), *aff'd in relevant part*, 337 F.2d 180 (4th Cir. 1965); *aff'd on other grounds*, 383 U.S. 169, 86 S.Ct. 749, 15 L.Ed.2d 681 (1966). A violation of this section unquestionably demonstrates a breach of trust, for in order to fall within its prohibition, a member of Congress must shed the duty of disinterested advocacy owed the government and his constituents in favor of championing private interests potentially inconsistent with this charge.

■ It is settled that a criminal conviction estops a defendant in a subsequent civil case from contesting those matters on

---

**3.** The government, anticipating the statute of limitations to be invoked by defendant, has argued the inapplicability of 28 U.S.C. § 2415(a), barring actions by the United States for money damages based on express or implied contracts if commenced after six years

from the accrual of the cause of action. However, defendant does not contend that this section applies; nor has he addressed the government's argument on its applicability in his papers in opposition to the motion. Consequently, I need not reach the question.

which the conviction rests, *Emich Motors v. General Motors*, 340 U.S. 558, 568–69, 71 S.Ct. 408, 95 L.Ed. 534 (1951); if the conviction results from a guilty plea, then the plea constitutes an admission of elements of the charge. *McCarthy v. United States*, 394 U.S. 459, 466, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969). Defendant concedes that his guilty plea of October 1, 1974 constitutes an admission that he was compensated for having represented FAAL, while a member of Congress, in connection with matters pending before the CAB and FAA. As such, his plea conclusively establishes his breach of fiduciary duty to the United States, and his accountability for that breach is clear.

Once having established a breach, the inquiry shifts to a determination of the amount recoverable by the government by reason of the defendant's betrayal of trust. It is on this issue that the dispute centers. The government contends that defendant's guilty plea encompassed admissions that, for his services on behalf of FAAL, defendant had received money from Martin Miller, Kenneth Burstine and Michael Zorovich in the form of payments to the Citizen's Committee for the Reelection of Bertram L. Podell and fees to the law firm of Podell & Podell; and that at his allocution, defendant admitted that he was paid through Leasing Consultants, Incorporated ("LCT"). Consequently, the government argues that the three copies of cashed and deposited checks submitted—two dated January 7, 1969 and March 13, 1969, drawn on the account of LSI, and payable to Podell & Podell for $12,350, and one dated May 1, 1969, drawn on the account of Martin Miller, and payable to "Citizens Committee for B. L. Podell" in the amount of $29,000—evidence the amount received by defendant for which he is accountable.

In an attempt to raise an issue of fact as to the amount of compensation, defendant argues that his plea covered only his general concession of liability referred to above, and did not extend to the amount received, or the source and means of the payments. In so contending, he relies on the following portion of plea allocution:

THE COURT: * * * What I would like to hear from you, tell me in your own words what it is you did in respect to the counts you are pleading guilty to so I can be satisfied that you are, in fact, guilty. DEFENDANT PODELL: If the Court pleases, while a member of Congress and acting as a lawyer for Florida Atlantic Airlines and paid by Leasing Consultants, Inc., I appeared before various Federal agencies, including the CAB, the FAA, and advocated the interests of the said Florida Atlantic Airlines.

I was indirectly compensated through my law firm for these appearances before the CAB and the FAA while a member of Congress.

I did not at the time know that I was violating any law, but I intended to do what I did.

THE COURT: I will accept the plea. MR. LaROSSA: I think Mr. Giuliani's statement should be read in conjunction with your acceptance of the plea, your Honor. It defines the limits. MR. GIULIANI: Your Honor, the government is agreeable to taking the plea to count 1, the conspiracy count, and count 5, the conflict of interest count.

It is the government's view that a plea to count 1 encompassing paragraphs 1 and 5B and C, and to count 5, satisfies the interests of justice in this case.

It is the government's position that the plea to the conspiracy count admits that the object of this conspiracy was to violate the conflict of interest law and thereby to defraud the United States. The government also understands that the defendant is not in any way admitting the bribery objects of the conspiracy. He is admitting the conflict of interest and the defrauding to the extent that it is meant by "conflict of interest."

In defendant's view, his plea to the conspiracy charge like "a general verdict of guilty . . . does not determine which of the particular means charged in the indictment were used to effectuate [the] conspiracy," *United States v. Wainer*, 211 F.2d 669, 672 (7th Cir. 1954), and since the sub-

stantive count—count 5—to which he also pleaded guilty was silent on the source and means of compensation, he cannot be deemed to have admitted the same; as a result, an issue of fact remains as to the amount received.

Overlooked by defendant's argument is the fact that defendant did not plead guilty to a general count of conspiracy; rather, his plea of guilty was directed at specific and carefully delineated portions of the conspiracy charge of the indictment, namely, paragraphs 1 and 5(b) and (c) of count 1, with certain deletions. That defendant knew this to be the case is evidenced by his acknowledgment in his allocution:

THE COURT: * * *

Mr. LaRossa, your counsel, has indicated that you are pleading guilty to certain counts of the indictment with certain deletions. I want to know whether that is, in fact, true, whether you are in fact doing that.

DEFENDANT PODELL: Yes, I am.

Thus, defendant's plea constitutes an admission of the contents of those counts, including the source and means of his compensation.

█ Defendant has attested that Podell & Podell received under a retainer agreement with LCI a payment of $10,000 in connection with a trip by defendant to Freeport, Bahamas, in December 1968; a payment of $1,000 for his trip to Nassau in February 1969; and a payment of $1,350 for his father's trip to Puerto Rico in the same month. However, defendant claims that such payments were unrelated to his activities on behalf of FAAL. In light of defendant's clear admissions that he was paid by LCI through his law firm, and that among the means used to carry out his activities were trips by defendant to the Bahamas, it is clear as a matter of law that defendant is accountable for at least $11,-000 of the sum so received.[4]

4. There is nothing before me to indicate, as a matter of law, that the $1,350 paid in connection with Podell's father's trip to Puerto Rico

█ Defendant's affidavit is silent with respect to the check for $29,000 from Miller, and although his attorney claims that an issue of fact exists with respect to the payment of this sum (Defendant's 9(g) statement, ¶¶ 2, 3, 4), defendant has not come forward with any proof, much less a contention, explaining this payment. Since defendant has admitted that he was compensated from Miller in the form of payments to the Citizen's Committee for the Reelection of Bertram L. Podell, the conclusion is inescapable that the $29,000 check represents compensation for his services in breach of his fiduciary duty.

Accordingly, the government's motion for summary judgment is granted in the amount of $40,000 (being the amount sought by the government less the $1,350 referred to in footnote 4 *supra*).

IT IS SO ORDERED.

was compensation for defendant's activities on behalf of FAAL.