KRAFTSMAN CONTAINER
CORPORATION, Plaintiff,

v.

Jack FINKELSTEIN and Shirley
Finkelstein, Defendants.

No. 77 C 82.

United States District Court,
E. D. New York.

Nov. 21, 1978.

Berman & Zivyak, New York City, by Jeffrey L. Zivyak, New York City, for plaintiff.

Rosenthal & Goldhaber, Brooklyn, by Arthur M. Gabor, Brooklyn, for defendants.

## MEMORANDUM AND ORDER

NEAHER, District Judge.

Plaintiff Kraftsman Container Corporation ("Kraftsman") is a New Jersey corporation having its principal place of business in that State. Defendant Jack Finkelstein is a former officer and director of Kraftsman and an owner of one-third of the issued stock of the company. This diversity action has been brought against Finkelstein and his wife, Shirley, to recover $164,462.14 of Kraftsman funds allegedly converted by them between June 1970 and January 1976. The action is now before the court on plaintiff's motion for an order granting it partial summary judgment against Jack Finkelstein on "the issue of liability."[1] Rule 56(c), F.R.Civ.P.

Because plaintiff has not seen fit to provide the memorandum of points and authorities required by Local General Rule 9(b), the precise legal theory underlying the instant motion is not entirely clear. In any event, according to plaintiff, at some time in 1976 a Union County, New Jersey, grand jury handed up a 32-count indictment charging Jack Finkelstein with various acts of embezzlement, fraudulent record-keeping and forgery, and the misappropriation of nearly $20,000 of Kraftsman's funds be-

---

1. Plaintiff also sought an order, pursuant to Rule 37, imposing sanctions for Jack Finkelstein's failure to appear at a scheduled deposition. The application was granted by separate order dated November 2, 1978.

tween January 1975 and January 1976. On November 8, 1976, Finkelstein pled guilty in Superior Court, Union County, to five counts of obtaining money by false pretenses,[2] in violation of N.J.Stat.Ann. § 2A:111–1. Finkelstein was subsequently sentenced to five concurrent terms of one to two years imprisonment, and was assessed a fine of $500 on each of the five counts. The terms of imprisonment were suspended, five concurrent terms of five years probation were imposed, and, as a special condition of probation, Finkelstein was directed to make restitution to Kraftsman in the sum of $1,214.50, the aggregate of the five checks set forth in the counts to which he had pleaded guilty.

As noted above, plaintiff seeks only partial summary judgment at this time, limited to the issue of "liability," leaving to some future stage in the litigation the computation of "damages." In support of its motion, plaintiff has supplied copies of the Union County indictment and December 3 sentencing minutes (Exhibits A and B, respectively), an affidavit of Mel Lubins, president of Kraftsman, and, at the court's request, a copy of the November 8 plea minutes. Despite the fact that virtually all of the claimed conversions were accomplished by allegedly improper drafts upon Kraftsman bank accounts or by diversion of checks payable to Kraftsman's order, plaintiff has not produced any of the checks involved, although a schedule describing some of these is appended to the complaint. Counsel for Jack Finkelstein has filed an affidavit in opposition in which he concedes his client's Union County conviction but denies all other material averments of the Lubins affidavit and Kraftsman's Local Rule 9(g) statement of undisputed facts. See Gabor Aff. (11/10/77), ¶ 6.

The theory upon which the instant motion is based, nowhere expressly set forth, is perhaps revealed in the Lubins affidavit:

"The answer [to the complaint] interposed on behalf of the defendant [Jack] Finkelstein constitutes in part a general denial. A mere denial is not enough to defeat a motion for partial summary judgment. These denials are interposed solely for the purpose of delay, and should be disregarded in the absence of any showing by the defendant of any material dispute as to fact. It is respectfully submitted that the defendant Finkelstein will be unable to raise any genuine issue of material fact with respect to his liability for misappropriation of funds from the plaintiff. Simply stated, he is a convicted felon who took money from his own company, and it should be summarily determined that he is liable to the plaintiff on account of his crimes. Upon such a finding, a further proceeding in the nature of an inquest should be conducted to determine the amount of that liability." Lubins Aff. (10/24/77), ¶ 9.

Because plaintiff has offered no authority for its rather startling view that a party's admission and conviction in a criminal proceeding for misappropriating a limited sum in several discrete transactions may, without more, expose him to civil liability for a vastly greater (and unascertained) amount arising from perhaps hundreds of distinct acts, *compare United States v. Podell*, 436 F.Supp. 1039 (S.D.N.Y.1977), aff'd, 572 F.2d 31 (2 Cir. 1978),[3] and because its papers

2. These five counts—counts 13 through 17—together charged Finkelstein with obtaining money by falsely representing to employees of United Counties Trust Company that certain checks drawn upon Kraftsman's account were good and negotiable. Each count refers to a single check, the amounts ranging from $153.50 to $365.00. At the plea proceeding, Finkelstein admitted that he had presented each of the enumerated checks for payment, that he had received the proceeds thereof, that the named payees were fictitious, and that none of the drafts were authorized by the corporation.

*State v. Jack Finkelstein*, Indict. No. 913, Minutes of Retraction of Plea (Superior Court, N.J., Union Co.—Law Div., 11/8/76).

3. *Podell* was a civil action brought by the government to recover sums accepted by the defendant, a Congressman, in breach of his fiduciary duty to the United States. The central issue was whether certain checks drawn by third parties to the order of the defendant's campaign committee and law firm represented the same payments he had, by his guilty plea in a prior criminal proceeding, admitted were improperly received by him. In view of the spe-

indicate a rather fundamental misconception of the summary judgment device, the court has undertaken to treat this motion in more familiar terms.

■ Rule 56(c), F.R.Civ.P., provides that summary judgment may be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The rule further permits the rendition of an interlocutory judgment limited to the issue of liability when only the amount of damages is genuinely in issue. *Id.* Moreover, Rule 56(e), as amended in 1963, provides that when a motion for summary judgment is supported by proper affidavits (or by the other materials referred to in Rule 56(c)), "an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Indeed, as the Second Circuit has only recently held, once the movant has made the requisite showing,

"an adverse party may not rest upon mere conclusory allegations or denials. The party opposing the motion must set forth 'concrete particulars,' *Dressler v. The MV Sandpiper*, 331 F.2d 130, 133 (2d Cir. 1964), and cannot make a secret of his evidence, holding it close to his chest until the trial. *See Donnelly v. Guion*, 467 F.2d 290, 291 (2d Cir. 1972). It is not sufficient merely to assert a conclusion without supplying supporting arguments or facts in opposition to the motion. *Id.* at 293. *See Applegate v. Top Associates, Inc.*, 425 F.2d 92, 96 (2d Cir. 1970)." *SEC*

*v. Research Automation Corp.*, 585 F.2d 31, 33 (2 Cir. 1978).[4]

■ It is, of course, settled that on a motion for summary judgment the court is not empowered to "try issues of fact; it can only determine whether there are issues to be tried," *American Mfrs. Mut. Ins. Co. v. American Broadcasting-Paramount Theatres, Inc.*, 388 F.2d 272, 279 (2 Cir. 1967), *quoted in SEC v. Research Automation Corp., supra*, 585 F.2d at 33 and that all permissible inferences are to be drawn in favor of the party opposing the motion, *Hill v. A-T-O, Inc.*, 535 F.2d 1349, 1354 (2 Cir. 1976). But the holdings of this circuit are entirely consistent with the function of the summary judgment device to expose sham issues, made more emphatic by the 1963 amendments, which added the final two sentences to Rule 56(e). As the Advisory Committee observed in connection with those amendments (intended to overcome a line of cases in the Third Circuit which had drained the rule of its vitality): "The very mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Adv.Com.Note to Proposed Amendments to Rule 56(e), 31 F.R.D. 648 (1962). See generally *Applegate v. Top Associates, Inc., supra; Donnelly v. Guion, supra*, 467 F.2d at 292.

■ Hence, a party may not retreat to "the mere allegations or denials of his pleading" in the face of "a motion for summary judgment made and supported as provided in" Rule 56. Rule 56(e) (emphasis supplied). The converse is, however, equally true; a party seeking summary judgment may not, through the simple expedient of recasting the conclusory allegations

cific character of the charges admitted by the defendant and his failure to provide a suitable explanation for the bulk of the payments (as evidenced by copies of the checks, supplied by the government in support of its motion), the district court granted summary judgment in favor of the government. See 436 F.Supp. 1039, 1043–44 (S.D.N.Y.1977). The Court of Appeals affirmed, noting that the checks, supplied by the government in the civil action had also been offered in evidence at the criminal trial which terminated with defendant's plea of guilty, thereby buttressing the trial court's finding that they represented the payments cited in the indictment. See 572 F.2d 31, 36 (2 Cir. 1978).

4. Rule 56(f), of course, permits the court to withhold judgment when the opposing party satisfactorily explains his inability "to present by affidavit facts essential to justify his opposition."

of his pleading in affidavit form, put his adversary to the burden of coming forward with "concrete particulars" showing the existence of triable issues. *Cf. Askew v. Hargrave,* 401 U.S. 476, 478–79, 91 S.Ct. 856, 28 L.Ed.2d 196 (1971). It is incumbent upon the movant in the first instance to show that there exists "no genuine issue as to any material fact," and that he would be, in effect, entitled to a directed verdict should his opponent fail "at least to specify some opposing evidence which it can adduce and which will change the result." *Radio City Music Hall Corp. v. United States,* 135 F.2d 715, 718 (2 Cir. 1943), *followed in Donnelly v. Guion, supra.* See *Adickes v. Kress & Co.,* 398 U.S. 144, 157–61, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). It is this requirement that plaintiff has failed to satisfy.

In paragraphs 4, 5 and 6 of his affidavit, Lubins sets forth what purports to be a description of the methods employed by Finkelstein to accomplish his defalcations (and which, recalling Caesar's Gaul, divide "into three major areas"). Kraftsman's position appears to be that these averments, either independently or in conjunction with Finkelstein's admissions and conviction in the New Jersey prosecution, are sufficient to establish Finkelstein's liability as a matter of law. See Lubins Aff., ¶ 9, quoted above.

Rule 56 does not require that any materials outside the pleadings be offered in support of a motion for summary judgment. An unsupported motion for summary judgment after answer is, however, indistinguishable from a motion under Rule 12(c), F.R.Civ.P., for judgment on the pleadings, and will necessarily fail if the pleadings disclose a material issue of fact. See 6 Moore's Fed.Practice, ¶¶ 56.9, 56.11[2] (1976). The real virtue of Rule 56, then, is that where, as here, the material allegations of a well-pleaded complaint are formally in issue, either party may in advance of trial demonstrate the want of any genuine issue by supplementing the record with materials of evidentiary value. The affidavit is a device expressly favored by Rule 56 for placing before the court the substance of

testimonial evidence that would be admissible at trial, and Rule 56(e) governs the form of such affidavits:

"Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."

The material averments of the Lubins affidavit (paragraphs 4 through 6) plainly fall short of this three-prong test. First, there is no indication that Lubins personally observed any of the transactions alleged (indeed, none is specifically referred to) or, for that matter, that he has examined the cancelled checks and can identify the various signatures and endorsements. Second, he presents only ultimate facts and conclusions rather than the primary facts to which he might be expected to testify. Similarly, the affidavit fails utterly to disclose the bases for the averments—indeed, despite plaintiff's contention that Finkelstein made unauthorized drafts upon Kraftsman's accounts and diverted for his own use the proceeds of checks made payable to the corporation, none of the checks has been supplied the court. See generally *Applegate v. Top Associates, Inc., supra; Dressler v. The MV Sandpiper,* 331 F.2d 130, 132–33 (2 Cir. 1964). Certainly, the fact of Finkelstein's New Jersey conviction does nothing to overcome these defects.

In sum, plaintiff has failed to sustain, on this motion, its threshold burden of showing that it has marshalled evidence which, standing alone, would entitle it to a directed verdict. See *United States v. J. B. Williams Co., Inc.,* 498 F.2d 414, 432 (2 Cir. 1974); *American Mfrs. Mut. Ins. Co. v. American Broadcasting-Paramount Theatres, Inc., supra,* 388 F.2d at 279; 6 Moore's Fed.Practice, ¶ 56.02[10] (1976); *cf. Sartor v. Arkansas Gas Corp.,* 321 U.S. 620, 624, 64 S.Ct. 724, 88 L.Ed. 967 (1944). The quality of the defendant's opposing materials is, therefore, irrelevant, as the Supreme Court's treatment of an analogous summary judgment motion in *Adickes v. Kress & Co., supra,* amply demonstrates. There, the

movant—defendant in a civil rights action—sought to shift to the plaintiff the burden, under Rule 56(e), of adducing some support for the allegation, critical to her claim, that a police officer was present in defendant's store at the time she was refused service. The Court, after noting that certain "unexplained gaps" in movant's supporting materials presented a jury question, in view of the rule that " '[o]n summary judgment the inferences to be drawn from the underlying facts contained in [the moving party's] materials must be viewed in the light most favorable to the party opposing the motion,' " *id.* 398 U.S. at 158–59, 90 S.Ct. at 1609 (quoting from *United States v. Diebold,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962)), rejected the argument that under amended Rule 56(e) plaintiff could not rely on the bare allegations of her complaint but was required "to come forward with an affidavit properly asserting the presence of the policeman in the store":

> "This argument does not withstand scrutiny, however, for both the commentary on and background of the 1963 amendment conclusively show that it was not intended to modify the burden of the moving party under Rule 56(c) to show initially the absence of a genuine issue concerning any material fact. The Advisory Committee note on the amendment states that the changes were not designed to 'affect the ordinary standards applicable to the summary judgment.' And, in a comment directed specifically to a contention like [defendant's], the Committee stated that '[w]here the evidentiary matter in support of the motion does not establish the absence of a genuine issue, summary judgment must be denied *even*

*if no opposing evidentiary matter is presented.'* Because [defendant] did not meet its initial burden of establishing the absence of a policeman in the store, [plaintiff] here was not required to come forward with suitable opposing affidavits." 398 U.S. at 159–60, 90 S.Ct. at 1609 (footnotes omitted; emphasis in quoted matter).

The *Adickes* holding is plainly controlling here.

 Of course, it does appear that Kraftsman has demonstrated that Jack Finkelstein was convicted, following a plea of guilty, of "taking" (the expression is Finkelstein's attorney's) some $1,214.50 in corporate funds.[5] This fact is uncontroverted and, pursuant to Rule 56(d), shall be deemed established. But any suggestion that this disposes of the issue of Finkelstein's liability for several hundred individual and, so far as appears from the pleadings, discrete transactions neither alluded to in the five indictment counts nor mentioned in the course of the plea proceeding is simply incredible, and plaintiff has supplied no authority for its novel proposition. Compare *Emich Motors v. General Motors,* 340 U.S. 558, 71 S.Ct. 408, 95 L.Ed. 534 (1951); *United States v. Podell, supra; cf. McNally v. Pulitzer Pub. Co.,* 532 F.2d 69, 76 (8 Cir. 1976). Moreover, the court is at a complete loss to understand how the judgment sought—limited to "the issue of liability"— would advance this litigation, since plaintiff would in any event be required to prove, by competent evidence, each transaction. That is, ultimate issues of liability would necessarily remain. Accordingly, plaintiff's motion for summary judgment is denied.[6]

---

**5.** Although there is no indication in the five counts or in Finkelstein's statements in connection with his guilty plea that Kraftsman rather than the drawee bank bore the loss caused by the unauthorized drafts, defendant's own papers characterize the plea as "to an embezzling from plaintiff." Defendant's Rule 9(g) Statement (11/10/77), ¶ 4.

It should also be noted that of the five checks described in the portions of the indictment to which Jack Finkelstein pled guilty, only four, totalling $1,061.00, are catalogued in the schedule appended to Kraftsman's complaint in this

action. Since defendant does not deny that he was convicted of drawing the remaining check without authorization, plaintiff is granted leave to amend its schedule to conform to the evidence. See Rule 15(b), F.R.Civ.P. It would also appear that the defendant will be entitled to claim as a set-off against any ultimate liability such sums as he has paid to Kraftsman pursuant to the New Jersey court's order of restitution.

**6.** We hold only that plaintiff has failed to carry its burden on this motion; nothing herein is

Finally, in view of the foregoing disposition of plaintiff's motion for summary judgment, only two points raised by the defendant in opposition require discussion at this time.

First, the defendant questions the "standing" of plaintiff to maintain this action. Counsel avers that on December 27, 1976, two weeks prior to the commencement of the action, a plan filed by Kraftsman under Chapter XI of the Bankruptcy Act, 11 U.S.C. § 701, et seq., was confirmed in the United States District Court for the District of New Jersey. He further avers "[t]hat a verification of this plan and a check of the Court records show this plaintiff is still under said Chapter XI." Gabor Aff. (11/10/77), ¶ 5(a). Invoking the authority of various sections of the Bankruptcy Act, defendant urges that only a receiver or one who has receiver's authority may prosecute a claim on behalf of a corporation in "receivership," and notes that plaintiff's papers are devoid of any indication that Kraftsman has such authority.

 The short answer is that unless otherwise specified in the order of confirmation, title to the debtor's property—if it has passed to a receiver, trustee, or debtor in possession during the pendency of the Chapter XI petition [7]—revests in the debtor immediately upon confirmation of an arrangement or plan. See Bankruptcy Act § 70(i), 11 U.S.C. § 110(i). Hence, the mere fact that a final decree closing the estate has not been entered, see 11 U.S.C. § 772, or that the bankruptcy court has retained jurisdiction, pending final allowance or disallowance of claims, id. § 769, or distribution

of the deposit, see id. §§ 767(2), (3) and 770, or for some other purpose, see id. § 768, will not preclude the debtor following confirmation from taking up and prosecuting claims not affected by the plan. See generally 9 Collier on Bankruptcy ¶ 9.33 (14th ed. 1975). In any event, a plaintiff is not required to plead its capacity to sue. See Rule 9(a), F.R.Civ.P. Thus, although it appears that defendant has adequately preserved his objections addressed to Kraftsman's capacity, see id., the bare recital that the corporation is "still under . . . Chapter XI" is far too equivocal, in view of the entry of the order of confirmation, to establish that the action has been brought without proper authority. Therefore, to the extent defendant's contention constitutes a cross-motion for summary judgment dismissing the complaint, it is denied, without prejudice to renewal upon a proper factual showing.

 Second, defendant complains that this action is duplicative of actions currently pending in the New York and New Jersey State courts. Apart from the purely conclusory statement contained in his attorney's affidavit, defendant has offered nothing to support his contention that this action is in any sense identical or similar to the State proceedings; in any event, he has failed to indicate the relief, if any, he seeks. Accordingly, it is sufficient simply to observe that "generally, as between state and federal courts, the rule is that 'the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction . . . .'" *Colorado River Water*

---

intended to suggest that this action is not of a kind susceptible of summary adjudication.

7. Under Chapter XI, appointment of a receiver or trustee is not mandatory. See Chapter 11 Rule 11–18(b). When none is appointed, § 342 of the Bankruptcy Act, 11 U.S.C. § 742, provides that "the debtor shall continue in possession of his property and shall . . . exercise all the powers of a trustee . . . ." See also Chapter 11 Rule 11–18(b). Bankruptcy Rule 610, made applicable to Chapter XI cases by Rule 11–57, in turn provides that:

"The trustee or receiver may, *with or without court approval*, prosecute or enter his

appearance and defend any pending action or proceeding by or against the bankrupt, or *commence and prosecute any action or proceeding in behalf of the estate, before any tribunal*." (Emphasis added.)

Hence, neither "receiver's authority" nor prior court approval is a prerequisite to suit by a debtor in possession. And, should the debtor in possession abandon a claim, "title revests in that same company as debtor and the debtor may proceed in its own name." 14 Collier on Bankruptcy, ¶ 11–57.02[1] (14th ed. 1976). See, e. g., *Dallas Cabana, Inc. v. Hyatt Corp.,* 441 F.2d 865 (5 Cir. 1971).

*Conserv. Dist. v. United States*, 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976) (quoting from *McClellan v. Carland*, 217 U.S. 268, 282, 30 S.Ct. 501, 54 L.Ed. 762 (1910)). Although it is settled in this circuit that "a district court may stay federal proceedings to allow resolution of a similar cause of action pending in state court," *Clarkson Co., Ltd. v. Shaheen*, 544 F.2d 624, 629 (2 Cir. 1976), defendant has not come forward with any facts warranting the exercise of the court's discretion to stay this action or justifying departure from the general rule that the federal courts are obliged to exercise the jurisdiction conferred upon them. See *Colorado River Water Conserv. Dist., supra.*

For the foregoing reasons, plaintiff's motion for partial summary judgment and defendant's cross-motion are denied.

SO ORDERED.