GOLDING BROS., DIV. OF W. R. GRACE, PLAINTIFF *v.* UNITED STATES, DEFENDANT

Before LANDIS, *Judge.*

Court No. 76-12-02775

(Decided August 22, 1983)

*DiFalco Amhurst Smithson Tannenbaum & Duval* (*Herbert T. Posner* on the motion) for the plaintiff.

*J. Paul McGrath,* Assistant Attorney General; *Joseph I. Liebman,* Attorney in Charge, International Trade Field Office, Commercial Litigation Branch (*Susan Handler-Menahem* on the motion), for the defendant.

LANDIS, *Judge:* In this classification action plaintiff moves for summary judgment, defendant opposes said motion and cross-moves for summary judgment.

The subject merchandise herein, fabric manufactured by Johnston of Wemyss, known as Quality S. 3392 was produced in and exported from the United Kingdon and entered periodically at the Port of New York during 1971 and 1972. Customs classified the merchandise pursuant to TSUS item 335.60, as woven fabrics, of vegetable fibers (except cotton): . . . containing over 50 percent by

[2] Samchok and Jin Heung.

weight of yarns which yarns are composed wholly or almost wholly of fibers not exceeding 5 inches in length and contain not less than 50 percent by weight either of manmade fibers or of manmade fibers and cotton.

Plaintiff contends that Customs' classification is erroneous, the merchandise being more properly classifiable under TSUS item 335.90, as woven fabrics, of vegetable fibers (except Cotton): Other: . . . weighing over 4 ounces per square yard.

The pertinent statutes are as follows:

### General Interpretative Rules

9. Definitions.—For the purposes of the schedules, unless the context otherwise requires—

\*       \*       \*       \*       \*       \*       \*

(f) the terms "of", "wholly of", "almost wholly of", "in part of", and "containing", when used between the description of an article and a material (e.g., "furniture of wood", "woven fabrics, wholly of cotton", etc.), have the following meanings:

\*       \*       \*       \*       \*       \*       \*

(ii) "wholly of" means that the article is, except for negligible or insignificant quantities of some other material or materials, composed completely of the named materials;

(iii) "almost wholly of" means that the essential character of the article is imparted by the named material, notwithstanding the fact that significant quantities of some other material or materials may be present; and

\*       \*       \*       \*       \*       \*       \*

### Schedule 3, Part 3, Subpart B

*Classified:*

    Woven fabrics of vegetable fibers (except cotton):

335.60      Fabrics, other than the foregoing, containing over 50 percent by weight of yarns which yarns are composed wholly or almost wholly of fibers not exceeding 5 inches in length and contain not less than 50 percent by weight either of manmade fibers or of manmade fibers and cotton.

*Claimed:*

    Other

      Weighing over 4 ounces per square yard

335.90      Other

The central issues are whether classification under TSUS item 335.60 requires that both the warp and the weft yarn be composed individually, either wholly or almost wholly, of fibers not exceeding five (5) inches in length, and whether each respective yarn must contain not less than fifty (50%) percent by weight of either manmade fibers or manmade fibers and cotton.

Plaintiff basically contends that the essential characteristic of the weft yarn is imparted by linen fibers in excess of five (5) inches in length and that it contains no manmade fibers or manmade fibers and cotton. Moreover, plaintiff submits that based upon the legislative history of Item 335.60, *both yarns* must be composed wholly or almost wholly of fibers not exceeding five (5) inches in length and, further, *both yarns* must contain at least 50% by weight either of manmade fibers or of manmade fibers and cotton. Accordingly, plaintiff concludes that the merchandise in issue is not classifiable under the provisions of TSUS Item 335.60, but instead is properly provided for under TSUS Item 335.90.

In support of its position plaintiff submits three affidavits. The first affidavit is by Mr. Charles Ian Barcley Reekie, the managing director of the firm known as Johnston of Wemyss (Johnston). The affiant states that in the years 1971 and 1972 Johnston sold certain fabric, known as Quality S. 3392, to plaintiff and, that the weft yarn of said fabric was composed of 100% linen fibers. He further states that all the linen yarn used in weaving the fabric sold to plaintiff was purchased from two linen yarn spinners, D. S. Honeyman of Fife, Scotland, and Richards Ltd. of Aberdeen, Scotland.

The next affidavit which plaintiff submits, is by Mr. D. J. L. Innes. According to the affidavit, Mr. Innes is a Director of D. S. Honeyman, Ltd. which is engaged in the business of spinning linen (flax) yarn. Further, the affiant states that during the years 1971 and 1972 D. S. Honeyman, Ltd. sold linen yarn to Johnston of Wemyss for purposes of Johnston's fabric production designated Quality S. 3392. Mr. Innes states that the flax sold to Johnston had a fiber length varying between twenty four (24) inches and forty (40) inches but, that in processing the yarns most were broken in length during carding operations, although at the final spinning process there was "a significant and substantial proportion of fibers varying from five (5) inches to eight (8) inches in length."

The final affidavit plaintiff submits is by Mr. D. A. B. Duke, a former Commerical Director of Richards Ltd., a manufacturer of yarns. He states that in and around 1972 his company supplied G. J. Johnston (Wemyss) Ltd. with linen yarn spun from raw flax material. He states that a characteristic of raw flax yarn spun for Johnston (Wemyss) is its unusually long staple length, normally well in excess of six inches, and is spun on gill spinning frames capable only of processing material which is predominately six inches in staple length or longer.

Additionally, plaintiff submits the results of various laboratory tests performed by the United States Customs Service on the imported merchandise.

In support of its cross-motion for summary judgment defendant also submits the results of Customs Service laboratory tests on the imported merchandise and, additionally, submits an affidavit executed by Amelia Eaton, the Laboratory Director of the U.S. Customs laboratory in New York verifying that the laboratory reports submitted by defendant are accurate copies of the original laboratory reports accurately reflecting the results of the chemical analyses performed by the laboratory.

Defendant also submits an affidavit executed by Arthur Price, Chairman of the Textile Science Department of the Fashion Institute of Technology. Mr. Price states that all woven fabrics are composed of two systems of yarns, a warp and a weft, and that any woven fabric may be composed of approximately a thousand (1,000) or more warp yarns and from ten (10) to possibly one hundred (100) or more weft yarns per inch. He further states that it is generally accepted trade practice in the textile industry, when referring to yarns in a fabric, to mean all of the yarns. Use of the term "yarns" means reference to all of the yarns in a fabric.

Reviewing the motions of both parties including the briefs and documents submitted in support thereof together with the amended pleadings, the court finds that there are material issues of fact present which require resolution upon a full trial on the merits. *Inter-Pacific Corp.* v. *United States,* 1 CIT 338 (1981). The essence of summary judgment is fact finding and not fact determination. *Yamaha International Corp.* v. *United States,* 3 CIT 108 (1982). The court determines whether there exists factual issues to be tried but must refrain from trying issues of fact on a summary judgment motion. *Heyman* v. *Commerce and Industry Insurance Co.,* 524 F. 2d 1317 (2d Cir. 1975). *Farr Man & Co.,* v. *United States,* 4 CIT 55, 544 F. Supp. 908 (1982).

Both parties seek final judgment merely upon the submission of shallow affidavits and certain laboratory reports. The court finds these insufficient to grant either party the right to such a drastic remedy which precludes a party from exercising its right to present evidence to the court on a full trial on the merits. *Donnelly,* v. *Guion,* 467 F. 2d 290 (2d Cir. 1972); *Yamaha International Corp.* v. *United States, supra.*

Plaintiff questions the competency of one of defendant's affiants (Amelia Eaton) to render an opinion that the imported fabric consists of many yarns on the grounds that plaintiff is unaware of any scientific or technical education or training of the affiant which would tend to qualify the affiant as competent to render an opinion as to this matter. Certainly this is a matter that should be brought out on direct testimony and challenged upon cross-examination. Moreover, plaintiff has not had a chance nor will it have on the

summary judgment motion to challenge the potentially very damaging statement by Arthur Price, the source of defendant's other affidavit.

Likewise defendant is entitled to inquire as to the testimony of plaintiff's three affiants. Plaintiff asks this court grant it summary judgment based merely upon the statement of the managing director of Johnston of Wemyss (Reekie affidavit) that all the weft yarn containing 100% linen fibres was purchased exclusively from two sources. In support of the Reekie affidavit plaintiff then submits affidavits of an official of each of these suppliers as to the length of the yarn sold to Johnston of Wemyss who created the fabric sold to plaintiff. Nothing is mentioned as to the length of the total yarn content if this is, and it certainly appears it will be, an issue in this case.

Where a party opposing summary judgment raises any triable fact questions, he has the right to adduce testimony of live witnesses and cross-examine the opponent's witnesses rather than to have to rely on the affidavits submitted for and in opposition to the summary judgment motion. *United States* v. *J. B. Williams Co.,* 498 F. 2d 414, 430 (footnote 19), (2d Cir. 1974); *S. S. Kresge Co.* v. *United States,* 77 Cust. Ct. 154, C.R.D. 76–6 (1976); *Schoenfeld & Sons, Inc.* v. *United States,* 3 CIT 123 (1982).

Accordingly, plaintiff's motion for summary judgment and defendant's cross-motion for summary judgment are denied in all respects.