## RADIO CITY MUSIC HALL CORPORATION v. UNITED STATES.

### No. 208.

Circuit Court of Appeals, Second Circuit.

May 3, 1943.

Laurence H. Axman and Mathias F. Correa, U. S. Atty., both of New York City, for appellant.

Richard Swan Buell and Francis T. Christy, both of New York City (McLanahan, Merritt, Ingraham & Christy, of New York City, of counsel), for appellee.

Before L. HAND, SWAN, and FRANK, Circuit Judges.

L. HAND, Circuit Judge.

This appeal is from a summary judgment for the plaintiff in an action to recover taxes erroneously collected for the year 1938: it turns upon whether certain actors engaged by the plaintiff in that year were "employees" within the meaning of §§ 801, 804 and 901 of Chapter 531 of the First Session of the 74th Congress, 49 St. at L., pages 636, 637, 639, 42 U.S.C.A. §§ 1001, 1004, 1101. That question in turn depends upon the meaning of § 811(b), and § 907(c), of that act, 42 U.S.C.A., §§ 1011 (b), 1107(c); especially whether they were "independent contractors" as that term is defined by Article 3 of Regulations 91, and Article 205 of Regulations 90. (Article 3 is set forth substantially in full in Texas Co. v. Higgins, 2 Cir., 118 F.2d 636, 637: for the purposes of this appeal any difference between it and Article 205 may be ignored.) After issue joined the plaintiff took the depositions of five of the actors in question, of its own treasurer, and of one, Markert, one of its producers and directors of those entertainments in which the actors appeared. Upon these, and the affidavit of its attorney, it secured the summary judgment appealed from. Two questions arise: (a.) whether, if the depositions be accepted as a substitute for a trial, the actors were "independent contractors" and not "employees"; (b.) whether the depositions should be so accepted as a substitute for a trial.

The depositions disclosed the following situation. The plaintiff operates a theatre in the City of New York in which it exhibits motion pictures, together with a theatrical performance, or "stage show." The "stage show" is performed by two kinds of actors; some concededly in the plaintiff's employ: e. g., an orchestra, a glee club, and a corps de ballet. The others perform various types of "vaudeville acts": performing animals, acrobats, comedy skits, singers, dancers, jugglers, ventriloquists, and the like. It is over the last that the controversy arises. One hundred and seventeen different "acts" are involved, whose performers received for the year a total of about $71,500; varying between $50 and $900 a week, according to the attraction, reputation, and numbers of the performers. The plaintiff's "senior producer" of its theatrical performances was one, Leonidoff, who engaged the actors upon weekly contracts, ordinarily oral, and· was, as we understand it, the final authority. He was not examined, but Markert had for six years been second in authority to Leonidoff, and certainly was as well acquainted with the facts. He testified that if he saw a "promising act," he might either build a small scene around it, or fill it into an "open spot" in his program "for seven or eight minutes." Generally he negotiated the contract with the actor through the actor's agent; sometimes the actors dealt with him themselves. The rate was fixed by the week, and if the "act" was performed by a troupe or group, generally only one of them spoke for the others who were often the spokesman's employees. If Markert had never seen the "act" he ordinarily required an "audition." To fit the "act" into the program he would sometimes cut it down and have the actor piece together what remained. Sometimes it was necessary for the actor to put something in the place of what was cut out, but Markert never attempted to say what it should be. He did indeed at times depart from this in the case of music, the actor being compelled to rehearse the new pieces for an hour or two; but that was done only to save the performance fee that would have been charged if the actor's music had been used; or when on occasion he put a song of his own choosing into a singer's repertory. At times he would also reduce or amplify the volume of a singer's voice. The plaintiff furnished the stage, scenery, lighting, orchestral music and attendants; sometimes it supplied a costume for one of the "acts." The producer directed the staging according to his requirements, fixed the times for the rehearsals, the number of performances in a day, required promptness in attendance, and prescribed the order of the songs and dances. He determined the time at which the "act" should appear on the stage, and sometimes insisted on leaving out parts of the dialogue or other features when he thought them unsuitable for the plaintiff's audience. His effort was to weld the different "acts" together into a harmonious program, but always giving each actor his opportunity to perform without interference. Sometimes he made an "act" part of a playlet, and then the actor might be required to mingle with the chorus and put on a costume congruent ·with the scene and with those of the other actors.

The depositions of five actors confirmed this testimony of Markert, and need not be stated in detail. They, and all the rest, traveled about from theatre to theatre seeking employment where they could get it, making contracts for stated periods, and severing connection with the producer, at least for the time being, as soon as the employment was over. The number of performers in any "act" varied from one to nine: five men and four women. The defendant does not allege that there is any reason to suppose that the five actors examined were atypical; all it urges is that a trial might develop relevant variations. On this record the judge held that all of the actors were "independent contractors" and not "employees" within the meaning of the statute; and that, as the defendant had proved nothing to the contrary, the case was proper for a summary judgment.

■■ We accept Article 3 of Regulations 91 as an authoritative definition of the distinction between an "employee" and an "independent contractor": it is really no more than a gloss upon the definition contained in Justice Gray's opinion in Singer Manufacturing Co. v. Rahn, 132 U. S. 518, 523, 10 S.Ct. 175, 33 L.Ed. 440. We assumed its conclusiveness in Texas Company v. Higgins, supra, 118 F.2d 636, 638, and so have the Tenth Circuit (Jones v. Goodson, 121 F.2d 176, 179) and the Seventh (Williams v. United States, 126 F.2d 129, 132). The test lies in the degree to which the principal may intervene to control the details of the agent's performance; and that in the end is all that can be said, though the regulation redundantly

elaborated it. In the case at bar the plaintiff did intervene to some degree; but so does a general building contractor intervene in the work of his subcontractors. He decides how the different parts of the work must be timed, and how they shall be fitted together; if he finds it desirable to cut out this or that from the specifications, he does so. Some such supervision is inherent in any joint undertaking, and does not make the contributing contractors employees. By far the greater part of Markert's intervention in the "acts" was no more than this. It is true, as we have shown, that to a very limited extent he went further, but these interventions were trivial in amount and in character; certainly not enough to color the whole relation. If the depositions had constituted the whole evidence upon a trial there would have been no issue to submit to a jury.

Nevertheless, however conclusive they were, if taken alone, the question remains whether the defendant should not be given a chance to contradict them by proving that, at least in some instances, the situation was not as Markert testified. Since it is forced to draw all its evidence from the plaintiff's own officers, or from other actors, is it not unfair to make this one-sided presentation final? There would be much force in this, if the motion had been heard merely upon affidavits; the right to cross examine Markert and the actors was almost the defendant's only protection. But it did fully cross-examine them, and did not shake their testimony; and, although if it wished, it might challenge Markert's good faith, before a jury, it does not suggest that he was fabricating. Indeed, it does not even suggest that his recollection was in fact mistaken, but only that it may have been as to some of the actors. It says that, given time, it may find that some of these were "employees," and that we should not take away its chance of doing so. That does not make a "genuine issue," Rule 56(c), Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, or a "substantial controversy," Rule 56(d). When a party presents evidence on which, taken by itself, it would be entitled to a directed verdict if believed, and which the opposite party does not discredit as dishonest, it rests upon that party at least to specify some opposing evidence which it can adduce and which will change the result. In this case the defendant should have speci-

fied some instances that it had reason at least to suspect would contradict Markert; the record against it was too specific to be met by mere hypothesis. Had the case gone to trial, it could not have asked the judge to tell the jury that, though Markert had testified honestly, they must reduce the recovery because he might have been mistaken about some of the actors. We cannot therefore see how a trial would add any certainty to the conclusion which is inevitable upon this record.

Judgment affirmed.