537 So.2d 145 (1989)
ZUBI ADVERTISING SERVICES, INC., a Florida Corporation, Appellant,
v.
STATE of Florida, DEPARTMENT OF LABOR AND UNEMPLOYMENT SECURITY, DIVISION OF UNEMPLOYMENT COMPENSATION, Appellee.
No. 88-613.
District Court of Appeal of Florida, Third District.
January 3, 1989.
James F. Comander, P.A., and Carlos Garcia, Miami, for appellant.
Karen Kugell, Fort Lauderdale, for appellee.
Before BARKDULL, DANIEL S. PEARSON and JORGENSON, JJ.
JORGENSON, Judge.
Zubi Advertising Services, Inc., appeals from a final order of the Director of the *146 Division of Unemployment Compensation. In his order, the Director affirmed the findings of fact and conclusions of law presented by the special deputy in his recommended order. The order concludes that certain individuals performing in radio and television commercials for Zubi as "talents" are not independent contractors, but employees, thereby obligating Zubi to pay on their behalf an unemployment compensation tax as provided in section 443.036(18), Florida Statutes (1987).[1] We reverse.
Agency determinations may be set aside if the reviewing court finds that the agency's conclusions are derived from findings of fact not supported by competent record evidence. Gershanik v. Department of Professional Regulation, Bd. of Medical Examiners, 458 So.2d 302 (Fla. 3d DCA 1984), rev. denied, 462 So.2d 1106 (Fla. 1985); see section 120.68(10), Fla. Stat. (1987). A finding of fact which rests on conclusions drawn from undisputed evidence is analogous to a legal conclusion. Such a finding does not carry the same conclusiveness for purposes of judicial review as one derived from probative disputed evidence. Holland v. Gross, 89 So.2d 255 (Fla. 1956). Based upon undisputed evidence in the form of testimony from a field auditor supervisor and the results of independent contractor questionnaires completed by Zubi and several talents, the special deputy made the following findings of fact:
Sometime prior to 1977, the Petitioner began operations as an advertising agency, producing television and radio advertisements for clients. Since at least 1985, the Petitioner has engaged the services of models, actors, and actresses to perform various roles in the commercial productions. It is these "talents" whose status is at issue in this case.
Over a number of years, the Petitioner has developed a list of talents who have indicated a willingness to work in commercial productions for the Petitioner. These talents have no written contracts with the Petitioner and, except for one actress who performs generally once a week, are called at irregular times. This one actress receives weekly remuneration of $250. The other talents receive a fixed amount for each production, whether the production takes a few hours or a few days. Talents are free to accept or reject offers made by the Petitioner and are free to work for other advertising agencies. Some talents are contacted infrequently, maybe a few times a year, while others are contacted more regularly. The Petitioner does not engage the services of talents through any union. The talents are professional models, actors, and actresses who receive no ongoing training from the Petitioner.
Once having accepted work for the Petitioner in a particular commercial production, the talent is required to report to a location, usually a production studio but sometimes out in the field, established by the Petitioner or a contracted production studio. The time the talent must report is also established by the Petitioner or the production studio. Once at the work location, the talent is supervised by a script writer working for the Petitioner and by other members of the production crew. Talents are given scripts which they must follow, the scripts being prepared by the Petitioner's script writer. If props or costumes are required for the production, the props and costumes are provided by the Petitioner or production studio. If the talent is not performing to the satisfaction of the script writer or production crew, the talent is required to redo the performance until it meets the Petitioner's satisfaction. Both the Petitioner and the talents may terminate the relationship at any time without liability.
Talents are paid a flat rate per production which is then billed to the Petitioner's clients. Any expenses incurred in the production are also passed through *147 to the clients. Talents do not receive any benefits such as medical insurance and are not covered under the Petitioner's workers' compensation or liability insurance policies. Talents generally consider themselves to be independent contractors.
Although section 443.036(18) defines the term "employment" and describes individuals deemed to be in employment, the statute does not specifically reference actors, actresses, or models who perform the kind of services rendered by talents. Under the provisions of section 443.036(18)(a)1.b., the term includes "[a]ny individual who, under the usual common-law rules applicable in determining the employer-employee relationship, has the status of an employee." The special deputy, therefore, appropriately invoked the common law criteria set forth in Cantor v. Cochran, 184 So.2d 173 (Fla. 1966), in which the supreme court adopted 1 Restatement (Second) of Agency Section 220 (1958) as a guide in distinguishing between independent contractor and employee status. Section 220 provides:
1. A servant is a person employed to perform services in the affairs of an other and who with respect to the physical conduct in the performance of the services is subject to the other's control or right to control.
2. In determining whether one acting for another is a servant or an independent contractor, the following matters of fact, among others, are considered:
a) the extent of control which, by the agreement, the master may exercise over the details of the work;
b) whether or not the one employed is engaged in a distinct occupation or business;
c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;
d) the skill required in the particular occupation;
e) whether the employer or the workman supplies the instrumentalities, tools and the place of work for the person doing the work;
f) the length of time for which the person is employed;
g) the method of payment, whether by time or by the job;
h) whether or not the work is part of the regular business of the employer;
i) whether or not the parties believe they are creating the relation of master and servant; and
j) whether the principal is or is not in business.
Crucial among the Restatement factors is the extent of control.
We find that several key findings of fact which go to the question of control are unsupported by competent substantial evidence. The remaining findings of fact, evaluated in light of the Cantor test and relevant case law, compel the conclusion that the talents are independent contractors.
The established fact that both the talents and Zubi could accept or reject job offers and services before a production commenced does not support the finding that the relationship between Zubi and the talents could be terminated at any time without liability to either party. Nothing in the record suggests that in mid-production, for example, a talent could quit with impunity and without incurring liability for the costs of production, or that Zubi could terminate a talent without incurring liability for wages earned. There is no evidence to support the finding that Zubi supplies production tools or props. The studio, not Zubi, dictates the time and location of performances.
Finally, the type of supervision exercised by Zubi throughout the creation of each commercial does not amount to extensive control over the talents. The supervision here is remarkably similar to that analyzed in Radio City Music Hall Corp. v. United States, 135 F.2d 715 (2d Cir.1943). The issue in Radio City was whether vaudeville actors who performed in the Radio City stage show were independent contractors or employees for purposes of unemployment compensation tax. Writing *148 for the court, Judge Learned Hand set forth the rule that "[t]he test lies in the degree to which the principal may intervene to control the details of the agent's performance; and that in the end is all that can be said... ." Id. at 717.
Depositions from several actors and the assistant to the producer of the theatrical performances revealed that the producer engaged the actors upon weekly, oral contracts for a fixed, weekly wage. Radio City "furnished the stage, scenery, lighting, orchestral music and attendants; sometimes it supplied a costume for one of the `acts'." Id. The producer occasionally added songs to a singer's repertory, adjusted the volume of a singer's voice, pared down an act, and directed the actor to piece together the remains. The producer also
directed the staging according to his requirements, fixed the times for the rehearsals, the number of performances in a day, required promptness in attendance, and prescribed the order of the songs and dances. He determined the time at which the "act" should appear on the stage, and sometimes insisted on leaving out parts of the dialogue or other features when he thought them unsuitable for the plaintiff's audience. His effort was to weld the different "acts" together into a harmonious program, but always giving each actor his opportunity to perform without interference.
Id. The actors severed connections with the producer as soon as the employment ceased and were free to work in other theaters. In holding that the actors were independent contractors, the court pointed out that some supervision inheres in any joint undertaking, but such supervision as was given by the Radio City producer did not transform the contributing contractors into employees.
Our sister court in Florida Gulf Coast Symphony, Inc. v. Dept. of Labor & Employment Security, 386 So.2d 259 (Fla. 2d DCA), rev. denied, 389 So.2d 1108 (Fla. 1980), applied the Cantor test to find as a matter of law that symphony musicians were independent contractors. The musicians were engaged in a distinct occupation and were considered by the orchestra to be independent contractors. The musicians supplied their own instruments, spent the majority of their time in activities not controlled by the orchestra, and were responsible for the manner in which the musical effects were achieved. The musicians received the bulk of their income from sources other than the orchestra, were paid on a per job basis, and were free to pursue other job opportunities. In sum, although the musicians played under seasonal contracts at specified times and places under the close direction of a conductor, because of the musicians' skill, the furnishing of their own instruments, and their ability to work for others at the same time, the court held them to be independent contractors.
The rationale of Florida Gulf Coast is equally apropos to the facts of the case now before us. It is undisputed that the talents are skilled professionals. In some sense, the talents furnish their own instruments. An actor's voice, speech, and body training comprise the tools of his trade and are a part of his unique professional identity. The talents bring to each script their skills and experience in interpreting and enacting the roles assigned to them. We find no meaningful difference between talents performing their craft within the confines of a script, symphony musicians performing their craft within the confines of a score, Florida Gulf Coast, or vaudeville actors performing their craft under the directives of a music hall producer, Radio City.
The order under review is reversed.
NOTES
[1] The orders under review and the parties' briefs to this court reference section 443.036(17), which defines the term "employing unit." Section 443.036(18) and its sub-sub-paragraphs define the term "employment" and describe those individuals who fall within its ambit.