T.C. Summary Opinion 2019-27

UNITED STATES TAX COURT

BRADLEY M. MCGUIGAN AND SHIRLEY W. MCGUIGAN, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 10617-17S.                    Filed September 30, 2019.

Maris Baltins, for petitioners.

Patsy A. Clarke, Lisa R. Jones, and Melissa D. Lang, for respondent.

SUMMARY OPINION

VASQUEZ, Judge:  This case was heard pursuant to the provisions of

section 7463 of the Internal Revenue Code in effect when the petition was filed.[1]

_____

[1] Unless otherwise indicated, all section references are to the Internal
Revenue Code in effect at all relevant times, and all Rule references are to the Tax
Court Rules of Practice and Procedure.

Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

Respondent determined deficiencies of $2,770 and $5,168 in petitioners' Federal income tax for 2014 and 2015, respectively. Respondent also determined a section 6662(a) accuracy-related penalty of $1,033.60 for 2015.

The issues for decision are whether: (1) petitioner husband was an independent contractor or a statutory employee entitled to report expenses on Schedules C, Profit or Loss From Business, or a common law employee whose expenses were reportable on Schedules A, Itemized Deductions, (2) petitioners are entitled to deductions for legal and professional services, insurance (other than health), and rent for vehicles, machinery, or equipment, and (3) petitioners are liable for the section 6662(a) accuracy-related penalty for 2015.

Background

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. Petitioners resided in Montana when they timely filed their petition.

During the years at issue petitioner Bradley M. McGuigan worked as a diesel technology specialist. Before then Mr. McGuigan had worked off and on for John Knerr for approximately 20 years. In or around 2012 Mr. Knerr partnered

with Chad Pardee to form Pardee Excavating, LLC, which later became Montana-Dakota Services, Inc. (MDS).[2] Mr. Knerr invited Mr. McGuigan to work for MDS, and he accepted.

Pursuant to an oral agreement with Mr. Knerr, Mr. McGuigan performed gas recovery services for MDS at multiple oil well sites across Montana and North Dakota. His duties included moving gas recovery equipment between oil well sites, setting up and maintaining the equipment to recapture gas, and training oil company employees to ensure continued plant operations. Much of the equipment was leased directly to MDS, which entrusted it to Mr. McGuigan. Whenever Mr. McGuigan needed assistance on a job, MDS sent additional workers to help him.

Mr. McGuigan worked at the oil sites without direct supervision. He set his own hours, which varied with the task at hand. Each day Mr. McGuigan filled out reports entitled "Montana-Dakota Services, Inc. Daily Production Reporting". These reports offered proof that Mr. McGuigan was providing quality service.

Additionally Mr. McGuigan submitted equipment logs to MDS secretaries, who tracked the equipment from site to site. Because he performed gas recovery

---

[2] In 2014 Pardee Excavating, LLC, brought in a new member and merged with MDS. Mr. Knerr and Mr. Pardee were part owners of both entities, and Mr. McGuigan kept the same employment agreement following this transition. Accordingly, references to MDS are to both companies.

services on site, he sometimes traveled hundreds of miles to do his job. Accordingly, he worked away from home for approximately 300 days in 2014 and 270 days in 2015.

Under his agreement with MDS, Mr. McGuigan was responsible for work-related expenses including food, lodging, travel, and insurance. He was also responsible for any expenses arising from damage to the equipment during transport. MDS did not reimburse him for these expenses. Additionally, he drove his own truck to the various worksites and took his tools with him.

In 2014 Mr. McGuigan paid $2,000 to rent a forklift, which he used to move certain equipment. MDS offered him a rollback truck to perform this task, but he opted to use the forklift instead because it would make the job easier. MDS did not reimburse him for the forklift expense.

When he was working on site at a refinery plant, the oil company trained Mr. McGuigan to use its privately owned technology. Some of this information was confidential. After speaking with an oil company representative about the issue of privacy laws, Mr. McGuigan sought legal advice on avoiding trade secret infringement disputes. Accordingly, he paid $1,500 and $2,500 for attorney's fees in 2014 and 2015, respectively. MDS did not reimburse him for these expenses.

Petitioners timely filed joint Forms 1040, U.S. Individual Income Tax Return, for both tax years at issue. Mr. McGuigan reported on the Forms 1040 that MDS paid him wages of $93,360 and $96,615 in 2014 and 2015, respectively. Likewise, MDS issued Mr. McGuigan Forms W-2, Wage and Tax Statement, and withheld Federal income tax.[3] Petitioners used a computer program to prepare their returns and file them electronically. They did not hire a tax preparer or an accountant.

On the returns Mr. McGuigan declared himself a "mechanic" and petitioner Shirley W. McGuigan declared herself "retired". Mrs. McGuigan also listed herself as a proprietor of "Jaws Northwest Corp." on petitioners' Schedules C for 2014 and 2015. Petitioners used these Schedules C to report the expenses related to Mr. McGuigan's employment with MDS under the premise that he was a statutory employee.

On February 17, 2017, respondent mailed petitioners a notice of deficiency with respect to tax years 2014 and 2015, disallowing their Schedule C deductions for legal and professional fees, insurance (other than health), and rent expenses. Respondent also recharacterized petitioners' remaining Schedule C deductions as

---

[3] The record includes a copy of Mr. McGuigan's 2015 Form W-2, which does not indicate in box 13 that Mr. McGuigan was a "Statutory Employee". The record does not include a Form W-2 for tax year 2014.

unreimbursed employee expenses and moved them to Schedule A for each year at issue.[4]

For 2015 respondent determined a penalty under section 6662(a) and (b)(2) for an underpayment due to a substantial understatement of income tax. The record includes Form 300, Civil Penalty Approval Form, signed by Revenue Agent (RA) Kyle Crider's group manager, who approved the RA's initial determination to impose the penalty for tax year 2015. The group manager's signature is dated January 6, 2017.

## Discussion

### I.    Burden of Proof

Generally, the Commissioner's determination of a deficiency is presumed correct, and the taxpayer has the burden of proving it incorrect. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). However, under section 7491(a), the burden of proof may shift to the Commissioner as to any factual issue relevant to a taxpayer's liability for tax if the taxpayer meets certain preliminary conditions. See Higbee v. Commissioner, 116 T.C. 438, 442-443 (2001). Petitioners have not claimed or shown that they meet the requirements of section

---

[4] Other adjustments made in the notice of deficiency are computational and need not be addressed in this opinion.

7491(a) to shift the burden of proof to respondent as to any relevant factual issue. Accordingly, the burden of proof remains on petitioners.

II.     Employment Classification

A.     General Rules

An individual performing services as an employee may deduct expenses incurred in the performance of services as an employee as miscellaneous itemized deductions on Schedule A to the extent the expenses exceed 2% of the taxpayer's adjusted gross income.  See secs. 62(a), 63(a), (d), 67(a) and (b), 162(a).  Itemized deductions may be limited under section 68 and may have alternative minimum tax implications under section 56(b)(1)(A)(i).

"An individual who performs services as an independent contractor is entitled to deduct expenses incurred in the performance of services on Schedule C and is not subject to limitations imposed on miscellaneous itemized deductions." Feaster v. Commissioner, T.C. Memo. 2010-157, slip op. at 5.  A statutory employee under section 3121(d)(3) is not an employee for purposes of section 62 and may deduct business expenses on Schedule C.  See Rosemann v. Commissioner, T.C. Memo. 2009-185, slip op. at 6-7 & n.3; see also Rev. Rul. 90-93, 1990-2 C.B. 33.

Petitioners argue that Mr. McGuigan was an independent contractor or a statutory employee during the years at issue and was thereby entitled to deduct business expenses on Schedules C. Respondent contends that Mr. McGuigan was a common law employee who could deduct his unreimbursed employee expenses on Schedules A only, subject to the 2% of adjusted gross income limitation.

An individual qualifies as a statutory employee under section 3121(d)(3) only if the individual is not a common law employee pursuant to section 3121(d)(2). See Ewens & Miller, Inc. v. Commissioner, 117 T.C. 263, 269 (2001); Rosemann v. Commissioner, slip op. at 7. Section 3121(d)(2) provides that an "employee" is "any individual who, under the usual common law rules applicable in determining the employer-employee relationship, has the status of an employee". Because an individual qualifies as a statutory employee only if the individual is not a common law employee, we will first decide whether petitioner was a common law employee of MDS.

B.    Common Law Employee

The term "employee" is not defined for purposes of the income tax issue before us; therefore, common law rules must be applied to determine whether an individual is an employee. Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 322-323 (1992); Matthews v. Commissioner, 92 T.C. 351, 360 (1989), aff'd, 907

F.2d 1173 (D.C. Cir. 1990); Simpson v. Commissioner, 64 T.C. 974, 984 (1975). Whether an employer-employee relationship exists is a question of fact. Air Terminal Cab, Inc. v. United States, 478 F.2d 575, 578 (8th Cir. 1973); Prof'l & Exec. Leasing, Inc. v. Commissioner, 89 T.C. 225, 232 (1987), aff'd, 862 F.2d 751 (9th Cir. 1988). If an employer-employee relationship exists, its characterization by the parties as some other relationship, such as principal-independent contractor, is of no consequence. Sec. 31.3121(d)-1(a)(3), Employment Tax Regs.

This Court has enumerated the following factors in determining whether an employer-employee relationship exists: (1) the degree of control exercised by the principal over the details of the work; (2) which party invests in the facilities used in the work; (3) the opportunity of the taxpayer for profit or loss; (4) whether the principal has the right to discharge the taxpayer; (5) whether the work is part of the principal's regular business; (6) the permanency of the relationship; and (7) the relationship the parties believe they are creating. Weber v. Commissioner, 103 T.C. 378, 387 (1994), aff'd per curiam, 60 F.3d 1104 (4th Cir. 1995); Prof'l & Exec. Leasing, Inc. v. Commissioner, 89 T.C. at 232; Simpson v. Commissioner, 64 T.C. at 984-985. No single factor is dispositive. Simpson v. Commissioner, 64 T.C. at 985. All of the facts and circumstances must be studied. Prof'l & Exec. Leasing, Inc. v. Commissioner, 89 T.C. at 232.

### 1. Degree of Control

While all of the above factors are important, the "right-to-control" is the "master test" in determining the nature of a working relationship. Matthews v. Commissioner, 92 T.C. at 361. Both the control exercised by the alleged employer and the degree to which the alleged employer may intervene to impose control must be examined. Radio City Music Hall Corp. v. United States, 135 F.2d 715, 717 (2d Cir. 1943); DeTorres v. Commissioner, T.C. Memo. 1993-161. "[N]o actual control need be exercised, as long as the employer has the right to control." Prof'l & Exec. Leasing, Inc. v. Commissioner, 862 F.2d at 753. In order for an employer to retain the requisite control over the details of an employee's work, the employer need not direct each step taken by the employee. Prof'l & Exec. Leasing, Inc. v. Commissioner, 89 T.C. at 234; Gierek v. Commissioner, T.C. Memo. 1993-642.

The record does not indicate that Mr. McGuigan worked for any entity other than MDS or hired his own subcontractors to assist him when he serviced MDS' customers, as an independent contractor might. Rather, he performed gas recovery services only for oil companies that were under contract with MDS. Whenever he needed assistance on a job, MDS sent additional workers to help him. MDS asserted control over Mr. McGuigan by requiring him to monitor the location of

the gas recovery equipment he used. In addition, Mr. McGuigan submitted daily reports to the oil companies as proof that MDS was providing the service for which it was under contract.

Although Mr. McGuigan set his own hours and worked without direct supervision, the record indicates that MDS had the right to control Mr. McGuigan by dictating his worksite, monitoring the quality of his performance, and tracking the equipment he needed to do his job. On the basis of the facts presented, this factor indicates that Mr. McGuigan was an employee.

### 2. Investment in Facilities

The fact that a worker provides his or her own tools or goods generally indicates independent contractor status. Ewens & Miller, Inc. v. Commissioner, 117 T.C. at 271. Conversely, the fact that a worker has no investment in the facilities used in the work is indicative of an employer-employee relationship. See id.

During the tax years at issue Mr. McGuigan supplied his own tools and transportation to accomplish his job at each oil well site. However, it is not clear from the record how much he paid for these tools. In addition, Mr. McGuigan did not invest financially in the transport, setup, or maintenance of the equipment he used to provide gas recovery services. Rather, MDS and the oil companies paid

for these essential expenses. Therefore, this factor indicates that Mr. McGuigan was an employee.

### 3. Opportunity for Profit or Risk of Loss

An opportunity for profit or the risk of loss on the basis of the worker's own efforts and skill indicates independent contractor status. See Simpson v. Commissioner, 64 T.C. at 988; Rosato v. Commissioner, T.C. Memo. 2010-39, slip op. at 13. In contrast, earning an hourly wage or fixed salary indicates an employer-employee relationship. See Robinson v. Commissioner, T.C. Memo. 2011-99, slip op. at 17-18 (citing James v. Commissioner, 25 T.C. 1296, 1300 (1956)), aff'd, 487 F. App'x 751 (3d Cir. 2012). For example, in Juliard v. Commissioner, T.C. Memo. 1991-230, this Court held that, because the taxpayer earned a salary and was reimbursed for expenses, he was not in a position to increase his profit by his own actions, and he was not at risk for loss.

For tax years 2014 and 2015, respectively, MDS paid Mr. McGuigan annual salaries of approximately $93,000 and $96,000. The record indicates that Mr. McGuigan earned his salary regardless of how well, or poorly, he performed his duties. Additionally, the record does not show that he received incentive compensation based on whether MDS increased its profits.

On the other hand, Mr. McGuigan credibly testified that the requirement that he pay for repairs on broken equipment could cause him significant losses. Thus, Mr. McGuigan's salary could be reduced by the amount he spent on work-related expenses because MDS did not reimburse these costs. Overall, this factor is neutral.

### 4. Right To Discharge

"The principal's retention of the right to discharge a worker is indicative of a common law employer-employee relationship." Rodriguez v. Commissioner, T.C. Memo. 2012-286, slip op. at 20 (citing Weber v. Commissioner, 103 T.C. at 391); see also Ellison v. Commissioner, 55 T.C. 142, 152 (1970). The record is silent on this factor. At most this factor is neutral.

### 5. Integral Part of Regular Business

A type of work that is part of the principal's regular business is indicative of employee status. See Simpson v. Commissioner, 64 T.C. at 989; Rosemann v. Commissioner, slip op. at 11. During the years at issue, MDS offered oil well services to oil companies in North Dakota and Montana. MDS assigned Mr. McGuigan to perform a specific service which the oil companies hired MDS to provide. Accordingly, Mr. McGuigan provided a service that lies within the scope

of MDS' regular business. Therefore, this factor indicates that Mr. McGuigan was an employee.

### 6. Permanency of Relationship

A continuing relationship indicates an employment relationship, while a transitory relationship may be indicative of independent contractor status. See Ewens & Miller, Inc. v. Commissioner, 117 T.C. at 273; Rosemann v. Commissioner, slip op. at 11.

We believe that the relationship between Mr. McGuigan and MDS was not transient because Mr. McGuigan worked for MDS from 2012 through the years at issue. Furthermore, Mr. Knerr, who was a member of MDS, had employed Mr. McGuigan intermittently for approximately 20 years. On the basis of the facts presented, this factor indicates that Mr. McGuigan was an employee.

### 7. Relationship the Parties Thought They Created

The withholding of taxes is consistent with a finding that an individual is a common law employee. See Packard v. Commissioner, 63 T.C. 621, 632 (1975); Rosato v. Commissioner, slip op. at 14. MDS provided Mr. McGuigan with Forms W-2 for the years at issue. In both 2014 and 2015 MDS withheld Federal income tax from Mr. McGuigan's income and remitted those amounts to respondent. MDS did not indicate on Mr. McGuigan's 2015 Form W-2 that he

was a statutory employee. On the basis of these facts, this factor indicates that Mr. McGuigan was an employee.

### 8. Conclusion

Several of the above factors indicate that Mr. McGuigan was a common law employee whereas other factors are neutral. After weighing these factors, the Court concludes that Mr. McGuigan was a common law employee of MDS for the 2014 and 2015 taxable years. Therefore, he is precluded from claiming Schedule C deductions as a statutory employee under section 3121(d) and the underlying regulations. See Ewens & Miller, Inc. v. Commissioner, 117 T.C. at 269; Colvin v. Commissioner, T.C. Memo. 2007-157, slip op. at 28, aff'd, 285 F. App'x 157 (5th Cir. 2008); see also sec. 31.3121(d)-1, Employment Tax Regs.

## III. Petitioners' Schedule A Deductions

We next determine whether petitioners are entitled to deductions for unreimbursed employee business expenses that respondent disallowed for lack of substantiation.

### A. General Rules

Deductions are a matter of legislative grace, and the taxpayer generally bears the burden of proving entitlement to any deduction claimed. See Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial

Ice Co. v. Helvering, 292 U.S. 435, 440 (1934).  A taxpayer claiming a deduction on a Federal income tax return must demonstrate that the deduction is allowable pursuant to a statutory provision and must further substantiate that the expense to which the deduction relates has been paid or incurred.  See sec. 6001; Hradesky v. Commissioner, 65 T.C. 87, 89-90 (1975), aff'd per curiam, 540 F.2d 821 (5th Cir. 1976).

Section 162 allows a taxpayer to deduct all ordinary and necessary expenses paid or incurred by the taxpayer in carrying on a trade or business; but personal, living, or family expenses are not deductible.  Secs. 162(a), 262(a).  A trade or business expense is ordinary if it is normal or customary within a particular trade, business, or industry, and it is necessary if it is appropriate and helpful for the development of the business.  Commissioner v. Heininger, 320 U.S. 467, 471 (1943); Welch v. Helvering, 290 U.S. at 113-114.

A "trade or business" includes the "trade or business" of being an employee. O'Malley v. Commissioner, 91 T.C. 352, 363-364 (1988); Primuth v. Commissioner, 54 T.C. 374, 377-378 (1970).  The taxpayer bears the burden of establishing that his employer would not have reimbursed him for such expenses. See Podems v. Commissioner, 24 T.C. 21, 22-23 (1955); Benson v. Commissioner, T.C. Memo. 2007-113, slip op. at 9; Putnam v. Commissioner,

T.C. Memo. 1998-285, slip op. at 8. He can do so by showing that he was required or expected to bear these costs. See Fountain v. Commissioner, 59 T.C. 696, 708 (1973); see also Dunkelberger v. Commissioner, T.C. Memo. 1992-723 (finding that management team expected taxpayer to bear expense of business lunches with vendors).

If the taxpayer is able to establish that he paid or incurred a deductible expense but is unable to substantiate the precise amount, the Court generally may approximate the deductible amount, but only if the taxpayer presents sufficient evidence to establish a rational basis for making the estimate (Cohan rule). See Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930); see also Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985). For certain kinds of business expenses, including automobile expenses, section 274(d) overrides the Cohan rule. See secs. 274(d), 280F(d)(4)(A)(i); Sanford v. Commissioner, 50 T.C. 823, 827-828 (1968), aff'd per curiam, 412 F.2d 201 (2d Cir. 1969).

B.    Legal and Professional Services

For 2014 and 2015, respectively, petitioners claimed deductions of $1,500 and $2,500 for legal and professional services. Respondent disallowed these deductions in full for lack of substantiation.

It is well established that legal fees stemming from a taxpayer's employee status are deductible on Schedule A. Test v. Commissioner, T.C. Memo. 2000-362, slip op. at 14, aff'd, 49 F. App'x 96 (9th Cir. 2002). The deductibility depends on the "origin and character" of the claim for which the legal fees were incurred and whether the claim bears a sufficient nexus to the taxpayer's business or income-producing activities. See United States v. Gilmore, 372 U.S. 39, 49 (1963); Test v. Commissioner, slip op. at 11.

Mr. McGuigan's testimony, which the Court found credible and forthright, establishes that he sought legal advice on avoiding trade secret infringement after an oil company representative advised him to do so. More specifically, the oil company was MDS' client, and MDS expected Mr. McGuigan to bear the cost of his employment-related expenses. As a result, Mr. McGuigan paid $1,500 and $2,500 in 2014 and 2015, respectively, to protect his employment as an oil mechanic. Taking into account the record as a whole, the Court concludes that these expenses originated in Mr. McGuigan's conduct as an employee of MDS. Therefore, petitioners are entitled to Schedule A deductions of $1,500 and $2,500, respectively, for tax years 2014 and 2015.

C.    Rent of Vehicles, Machinery, or Equipment

For 2014 and 2015, respectively, petitioners claimed deductions of $9,856 and $3,600 for rent of vehicles, machinery, or equipment.  Respondent disallowed these expenses in full for lack of substantiation.

A portion of this reported expense for 2014 arises from Mr. McGuigan's renting a forklift.  Mr. McGuigan testified at trial that "[he] had a choice to use a rollback truck that * * * [MDS] would have paid for", but he opted instead to rent a forklift for $2,000 "to make * * * [his] job a hundred percent easier and quicker."  Respondent argues that petitioners are precluded from deducting the forklift rental expense because MDS offered other equipment for Mr. McGuigan to use in the course of his employment.

As discussed above Mr. McGuigan must establish that MDS either required or expected him to pay for the expense of renting vehicles, machinery, or equipment.  See Fountain v. Commissioner, 59 T.C. at 708; see also Dunkelberger v. Commissioner, T.C. Memo. 1992-723, 1992 Tax Ct. Memo LEXIS 763, at *5.  The record, however, shows that MDS neither required nor expected Mr.

McGuigan to rent the forklift. Accordingly, petitioners are not entitled to deduct the forklift rental expense.[5]

Other than the forklift rental expense, the record contains no evidence of petitioners' reported rent expenses. We therefore sustain respondent's disallowance of these deductions.

D.     Insurance (other than health)

We next address respondent's disallowance of petitioners' deductions for insurance (other than health).

1.     2014

On their 2014 return petitioners deducted $987 for insurance. Respondent argues that petitioners are precluded from deducting this expense for lack of substantiation. The record is devoid of evidence of this reported expense. Consequently, respondent's determination on this issue is sustained.

2.     2015

On their 2015 return petitioners deducted $3,654 for insurance. Respondent contends that this reported expense was for automobile insurance, and petitioners have not argued otherwise. Petitioners were allowed a Schedule A deduction for

---

[5] While we do not doubt that the use of the forklift improved his job performance, Mr. McGuigan's job performance is not the issue before us.

car and truck expenses using the standard mileage rate.  See sec. 1.274-5(j)(2), Income Tax Regs.

A taxpayer may deduct vehicle expenses using either actual costs or the standard mileage rate.  See id.  Because petitioners cannot claim deductions for both actual expenses and those calculated using the standard mileage rate, we sustain respondent's disallowance.  See Tesar v. Commissioner, T.C. Memo. 1997-207, slip op. at 17 ("Automobile expense may be computed using actual costs, such as depreciation, or using the standard mileage method; thus, petitioners cannot deduct depreciation expense and use the standard mileage rate.").

IV.    Section 6662(a) Accuracy-Related Penalty

We next determine whether petitioners are liable for a section 6662(a) accuracy-related penalty for tax year 2015.[6]  Section 6662(a) imposes a penalty equal to 20% of any underpayment that arises from a substantial understatement of income tax.  See sec. 6662(b)(2).  An understatement is substantial if it exceeds the greater of 10% of the correct tax or $5,000.  Sec. 6662(d)(1)(A).

Under section 7491(c) respondent has the burden of production with respect to the section 6662(a) penalty.  To meet this burden, respondent must produce

---

[6]  While petitioners did not address their liability for the accuracy-related penalty in their petition, we find that it was tried by consent.  See Rule 41(b).

sufficient evidence indicating that it is appropriate to impose the penalty against petitioners. See Higbee v. Commissioner, 116 T.C. at 446. Respondent's burden of production under section 7491(c) includes establishing compliance with the supervisory-approval requirement of section 6751(b). See Graev v. Commissioner, 149 T.C. 485, 493 (2017), supplementing and overruling in part 147 T.C. 460 (2016).

Section 6751(b)(1) provides that, subject to certain exceptions in section 6751(b)(2), no penalty shall be assessed unless the initial determination of the assessment is personally approved in writing by the immediate supervisor of the individual making the determination or such higher level official as the Commissioner may designate. Written approval of the initial penalty determination under section 6751(b)(1) must be obtained before the proposed penalty is first formally communicated to the taxpayer in a writing that also advises the taxpayer of his rights to appeal the penalty with the Internal Revenue Service Office of Appeals. Clay v. Commissioner, 152 T.C. __, __ (slip op. at 44) (Apr. 24, 2019).

A reasonable-cause exception to the section 6662(a) penalty is found in section 6664(c)(1), which provides that no penalty is imposed under section 6662

"with respect to any portion of an underpayment if it is shown that there was a reasonable cause for such portion and that the taxpayer acted in good faith with respect to such portion." The determination of whether a taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all the pertinent facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs. The most important factor is the extent of the taxpayer's effort to assess his or her proper tax liability. Id. Similarly, reasonable cause and good faith is not necessarily indicated by reliance on facts that, unknown to the taxpayer, are incorrect. Id.

Respondent has complied with the requirements of section 6751(b)[7] and contends that petitioners are liable for a section 6662(a) and (b)(2) penalty for 2015 to the extent that there is a substantial understatement of income tax. Thus, if the Rule 155 computation indicates that petitioners' understatement exceeds the greater of $5,000 or 10% of the amount of tax required to be shown on the return, respondent has satisfied his burden of production.

---

[7] The RA in this case recommended the assertion of a substantial understatement penalty under sec. 6662(b)(2). That recommendation was approved in writing by his immediate supervisor on January 6, 2017, as evidenced by a Civil Penalty Approval Form included in the record.

Since respondent has met his burden, petitioners must come forward with persuasive evidence that the penalty is inappropriate. Petitioners may meet their burden by proving that they acted with reasonable cause and in good faith with respect to the underpayment. See sec. 6664(c)(1); see also Higbee v. Commissioner, 116 T.C. at 447; sec. 1.6664-4(b)(1), Income Tax Regs. Petitioners, however, have not argued or even suggested that they acted with reasonable cause, arguing only that their returns were correctly based on their determination that Mr. McGuigan was a statutory employee. As explained supra, petitioners' determination was incorrect.

We therefore hold that petitioners are liable for the section 6662(a) and (b)(2) accuracy-related penalty to the extent the Rule 155 computations show there is an underpayment attributable to a substantial understatement of income tax.

To reflect the foregoing,

Decision will be entered under

Rule 155.